*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STACEY J MOREA, formerly known as STACEY J ROBACH,

        Plaintiff-Appellee,

v

MICHAEL P ROBACH,

        Defendant-Appellant.

UNPUBLISHED
August 11, 2026
10:29 AM

No. 375853
Kent Circuit Court
LC No. 14-000628-DM

Before: BOONSTRA, P.J., and YOUNG and KOROBKIN, JJ.

PER CURIAM.

In this postjudgment divorce case, defendant appeals by leave granted[1] the trial court's May 12, 2025 order granting plaintiff's motion to set aside its October 3, 2022 stipulated order[2]; the stipulated order incorporated the parties' agreement to share the cost of healthcare expenses for their adult children. We vacate the May 12, 2025 order granting plaintiff's motion and remand for further proceedings consistent with this opinion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

When the parties divorced in 2014, a Uniform Child Support Order required defendant to maintain healthcare coverage for their three daughters until they attended their last day of high school on May 20, 2022. After that date, the parties negotiated a new agreement under which defendant would continue to maintain healthcare insurance for the children, and defendant and plaintiff would share out-of-pocket healthcare expenses equally. The agreement included a

---

[1] *Robach v Robach*, unpublished order of the Court of Appeals, entered November 6, 2025 (Docket No. 375853).

[2] The May 12, 2025 order refers to the underlying order as the "October 23, 2022 order," but it is clear from the context of the proceedings that the trial court was referring to its October 3, 2022 order, which was entered by a predecessor judge.

provision for late fees if a party failed to timely reimburse the other for his or her share of the expenses:

> 5. When requesting payment to cover out-of-pocket costs from the other party, the requesting party shall provide a clean, unmarked/unaltered copy of the entire bill/invoice to the other party within thirty (30) days of receipt of such invoice. . . .

> 6. The requested party will have thirty (30) days thereafter to pay the fifty percent (50%) of the amount paid to the requesting party; provided, that the requesting party complies with all reasonable requests for information received from requested party. . . .

> 7. In the event of a breach of any of the provisions of sections 5 and 6, requested party shall be liable to requesting party for an immediately due and payable penalty of $100 per breach and then $50 for each week the breach continues, without prejudice to any other rights provided for by law or under this Stipulation and Order such as the right to specific performance, the right to an injunction or the right to claim damages instead of this penalty.

The agreement automatically renewed each year unless either party sent a timely written notice of his or her intent not to renew. The trial court adopted the parties' agreement in a stipulated order dated October 3, 2022. In March 2024, plaintiff provided notice to defendant of her intention not to renew the agreement, and the agreement terminated on December 31, 2024.

In December 2024, defendant moved for an order to show cause, asserting that plaintiff had breached the agreement by refusing his requests for reimbursement and making untimely payments. Defendant provided a spreadsheet to document the allegedly overdue payments and accrued late fees. On the basis of that documentation, defendant stated in his motion: "As of December 9, 2024, the total amount due and owing is $83.69 for past medical reimbursements and $37,200.00 in penalties pursuant to the parties' order for a total of $39,779.25 plus attorney fees."[3] Defendant requested that plaintiff be held in civil contempt and be required to cure the alleged breaches by a date certain, or alternatively that she be incarcerated until the contempt is cured. The trial court entered an order to show cause, and plaintiff pleaded not guilty. Defendant later admitted that he mistakenly did not account for a $504 payment made by plaintiff in October 2022, so he revised his spreadsheet and reduced his claim for penalties to $15,950.

Plaintiff moved to set aside the October 3, 2022 order, arguing for a variety of specified reasons that the agreement was procedurally and substantively unconscionable.[4] She claimed an

---

[3] We recognize that the sum of $83.69 and $37,200.00 is not $39,779.25, but these are the numbers defendant used in his motion.

[4] The unconscionability of an agreement that a trial court adopts as a stipulated order is relevant to the question whether setting aside the order is appropriate under MCR 2.612(C)(1). See, e.g., *Heugel v Heugel*, 237 Mich App 471, 482; 603 NW2d 121 (1999). But unconscionability is also

imbalance of bargaining power during negotiations[5] and described the late fees as "obscene." She noted that, although the penalties were "not technically interest," they far exceeded the 25% interest rate that would subject a person to liability for criminal usury under MCL 438.41. She further argued that if the provision for late fees was a liquidated-damages clause, then it was unenforceable because the fees were so unreasonable that they should be considered penalties.

During a hearing on the motion, defendant argued that plaintiff's motion to set aside the order was an untimely motion for relief under MCR 2.612. He also argued that the agreement could not be unconscionable because plaintiff herself had proposed the terms of the late-fee provision after rejecting defendant's offer of more onerous fees. The trial court declined to address the issue of unconscionability and instead indicated that, acting as a court of equity, it would set aside the order under MCR 2.612(C)(1)(f). The court referred to the doctrine of laches and noted that the alleged unpaid medical expenses was only $83.69, but that defendant had allowed the late fees to reach a "ridiculous" amount of $37,200 before moving the court for an order to show cause.[6] It further criticized the late fees as "grossly inequitable" and "violative of usury laws," and it believed that defendant used "spurious accounting" methods to "arbitrarily calculate[]" the amount owed. The court indicated that it would not enforce the October 3, 2022 order, but it maintained the scheduled proceedings on the order to show cause "related to the $83.69 and any other reimbursements that the parties believe[d] are owed to them." It entered an order granting plaintiff's motion and continuing the show cause hearing "to permit the parties to put on proofs regarding outstanding reimbursements, previous penalties paid pursuant to the October 23, 2022 Order, and competing requests for attorney's fees and costs." This appeal followed.

## II. MOTION TO SET ASIDE ORDER

Defendant argues that the trial court abused its discretion when it granted plaintiff's motion to set aside the October 3, 2022 order. We agree that the trial court did not articulate proper bases for setting aside the October 3, 2022 order under MCR 2.612(C)(1), and we therefore vacate the trial court's May 12, 2025 order and remand for further proceedings.

## A. STANDARD OF REVIEW

"We review a trial court's decision to grant or deny a motion for relief from judgment for an abuse of discretion, which occurs when the trial court's decision falls outside the range of

---

an independent basis for setting aside a stipulated order. See *Limbach v Oakland Co Bd of Co Rd Comm'rs*, 226 Mich App 389, 394; 573 NW2d 336 (1997) ("[A] stipulation may be set aside where there is evidence of mistake, fraud, or unconscionable advantage. Indeed, a stipulation is a type of contract, and contract defenses are available to a party who seeks to avoid a stipulation.") (citation omitted).

[5] Neither party was represented by counsel in the negotiations, but defendant himself is an attorney.

[6] It is not clear from the record whether the trial court was aware that defendant had reduced his claim for late fees to $15,950.

-3-

principled outcomes." *Int'l Outdoor, Inc v SS Mitx, LLC*, 349 Mich App 212, 222; 27 NW3d 365 (2023). A court also abuses its discretion when it makes an error of law. *Id*.

## B. ANALYSIS

We begin by addressing what we are and are not deciding on this appeal. Our review is limited to whether the trial court abused its discretion because it failed to identify proper bases for setting aside the October 3, 2022 order under MCR 2.612(C)(1). But we do not express an opinion as to whether plaintiff should be held in contempt for failing to reimburse defendant for any medical expenses or to pay any late fees. Nor do we decide any issue, including issues already raised by the parties below, that might form an independent basis for reducing or eliminating plaintiff's obligation to pay the expenses or late fees on remand. We do not decide, for example, whether the late-fee provision is unconscionable, whether the late-fee provision is a reasonable liquidated-damages provision or an unenforceable penalty provision, whether defendant failed to provide the bills or invoices required to trigger plaintiff's payment obligation under the agreement, whether the doctrine of laches applies, or whether defendant should be sanctioned for his conduct during the proceedings. We also do not preclude the trial court from later setting aside the October 3, 2022 order under MCR 2.612(C)(1) if circumstances change or the parties present evidence that would satisfy the requirements for doing so, including evidence of extraordinary circumstances arising out of improper conduct by defendant not relied upon by the trial court, as long as the trial court's reasoning is consistent with this opinion and any other applicable law.

A party seeking relief from judgment must show that one of the circumstances enumerated in MCR 2.612(C)(1) exist:

(1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

(a) Mistake, inadvertence, surprise, or excusable neglect.

(b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial . . .

(c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

(d) The judgment is void.

(e) The judgment has been satisfied, released, or discharged; a prior judgment on which it is based has been reversed or otherwise vacated; or it is no longer equitable that the judgment should have prospective application.

(f) Any other reason justifying relief from the operation of the judgment.

The trial court based its decision to set aside the October 3, 2022 order on MCR 2.612(C)(1)(f), which generally "provides the court with a grand reservoir of equitable

power to do justice in a particular case and vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Heugel v Heugel*, 237 Mich App 471, 481; 603 NW2d 121 (1999).[7] In *Heugel*, this Court outlined the requirements for setting aside a judgment under MCR 2.612(C)(1)(f):

> In order for relief to be granted under MCR 2.612(C)(1)(f), the following three requirements must be fulfilled: (1) the reason for setting aside the judgment must not fall under subsections a through e, (2) the substantial rights of the opposing party must not be detrimentally affected if the judgment is set aside, and (3) extraordinary circumstances must exist that mandate setting aside the judgment in order to achieve justice. [*Heugel*, 237 Mich App at 478-479 (citations omitted).][8]

This Court in *Heugel* affirmed the trial court's finding that extraordinary circumstances existed that mandated that the property settlement and spousal support provisions of a judgment of divorce be set aside. Specifically, where the husband—whose wife was disabled from working yet received no spousal support other than a lump sum that appeared instead to be her share of the marital assets— promised his wife that they would remarry and then remained in the marital home, the Court agreed that the husband had secured the judgment of divorce through improper conduct, having "abused the unique nature of the husband-wife relationship to lead defendant to believe that the entry of the divorce judgment was an irrelevant formality." *Id*. at 481. The Court stressed that "[g]enerally, relief is granted under subsection f only when the judgment was obtained by the improper conduct of the party in whose favor it was rendered." *Id*. at 479.

But in this case, the trial court did not identify any improper conduct by defendant by which he obtained entry of the October 3, 2022 stipulated order. Defendant's alleged "spurious accounting" and delay in filing a motion to show cause did not constitute extraordinary circumstances because MCR 2.612(C)(1)(f) is typically reserved for scenarios in which "the judgment was obtained by the improper conduct of the party in whose favor it was rendered." *Heugel*, 237 Mich App at 479. The alleged "spurious accounting" and delay in enforcement occurred *after* the judgment was entered. A party's alleged misconduct when enforcing a judgment may justify a motion for sanctions, but not relief from the judgment.

We are therefore unable to find that there are "extraordinary circumstances" that mandate setting aside the order in order to achieve justice. On the current record, this appears simply to be a situation in which recurring late fees accrued over a long period of time because of payments

---

[7] A motion to set aside judgment under MCR 2.612(C)(1)(f) must be made within a "reasonable time." MCR 2.612(C)(2). Although defendant argued in the trial court that plaintiff's request was untimely, he does not argue that position on appeal, so he has abandoned that subissue. See *Etefia v Credit Technologies, Inc*, 245 Mich App 466, 471; 628 NW2d 577 ("Insufficiently briefed issues are deemed abandoned on appeal.").

[8] In this case, the first requirement was satisfied. None of the circumstances identified by the trial court as influencing its decision—including its belief that the late fees were grossly inequitable, violated usury laws, and were arbitrarily calculated—are encompassed in the other subsections.

that were allegedly never made, which is a potential scenario that the parties should have been aware of at the time that they agreed to the late-fee provision. See *Rose v Rose*, 289 Mich App 45, 59; 795 NW2d 611 (2010) ("In striking their deal, both parties deliberately risked that future circumstances would render their contract inequitable.").

In *Rose*, the parties entered into a consent divorce judgment in which the defendant agreed to pay the plaintiff $230,000 annually in spousal support in exchange for the plaintiff's agreement to forgo any interest in the defendant's business, which was valued at $6 million. *Id*. at 47. The agreement included a provision stating that the amount and duration of spousal support could not be modified. *Id*. Two years later, the business failed suddenly and unexpectedly, through no fault of the defendant. *Id*. at 48. The defendant's income was reduced to $52,000, and even if he liquidated all his assets, he could only continue the spousal-support payments for another three years. *Id*. at 56. The defendant moved for relief from judgment, but this Court held that even though the radical change in the defendant's financial circumstances made his spousal-support obligations inequitable, the contract should be enforced as written because by making the obligation nonmodifiable, the parties had accepted that future circumstances could make the terms unfair to one party or the other. *Id*. at 60. This Court described the business's sudden failure as "tragic, but hardly extraordinary," explaining that a business failure was not "so unexpected and unusual" that it would justify setting aside the consent judgment. *Id*. at 62.

The circumstances in this case appear even less extraordinary than in *Rose*. The $15,950 in claimed late fees is substantially less than the amount at issue in *Rose* and, unlike in *Rose*, there is no evidence in the record that the claim would cause a financial hardship to the party seeking relief from judgment. Like in *Rose*, the contract was operating exactly as the parties contemplated at the time they entered into it. By agreeing to a weekly late fee with no limitations, the parties deliberately risked that a single missed payment potentially could snowball into thousands of dollars in late fees.[9] The difference between the unpaid reimbursement and the total late fees may have shocked the trial court, and it may or may not be justifiable for other reasons, but it was not an unexpected or unusual circumstance that would mandate setting aside the order.

We also conclude that the trial court's decision to set aside the order detrimentally affected defendant's substantial rights to the late fees, including any late fees that the parties had already paid. The court informed the parties that it would entertain requests "retroactively" for an "accounting or reimbursement" of any expenses or penalties that either party had already paid to the other, now that it had set aside the order. So even though the agreement had already terminated pursuant to plaintiff's notice of nonrenewal, the trial court indicated that it intended not only to deny defendant's claim for the outstanding late fees, but also potentially to reverse previous payments of expenses and late fees. This clearly affected defendant's substantial rights.

As noted, our conclusion does not definitively determine defendant's right to any late fees. Plaintiff argues, for example, that the agreement was unconscionable, which is a pertinent

---

[9] We recognize both (1) the marked disparity between the claimed deficiency of $83.69 and the claimed late fees of $15,950 (originally $37,200.00), and (2) defendant's position that, notwithstanding the trial court's characterization, the claimed late fees did not result from a single deficiency but rather of multiple deficiencies over a significant period of time.

consideration independent of a MCR 2.612 analysis. See *Limbach v Oakland Co Bd of Co Rd Comm'rs*, 226 Mich App 389, 394; 573 NW2d 336 (1997) (explaining that a stipulated order may be set aside because of contract defenses such as unconscionability). The issue of unconscionability is also pertinent to an analysis under MCR 2.612 because defendant's substantial rights would not be affected by setting aside the order if the agreement were determined to be unconscionable. See *Heugel*, 237 Mich App at 482 ("We cannot find that plaintiff's substantial rights are detrimentally affected because he is not permitted to enforce an unconscionable agreement."). Plaintiff is generally correct that setting aside a stipulated order or consent judgment does not affect a party's substantial rights if the agreement was unenforceable to begin with.[10] But unlike in *Heugel*, the trial court in this case declined to address whether the agreement was unconscionable, so unconscionability was not an identified basis for its decision to set aside the order under MCR 2.612(C)(1)(f). Because we must reverse on the current record for a lack of extraordinary circumstances, we need not address whether the agreement was unconscionable. To the extent that unconscionability may be relevant for plaintiff's defense in subsequent show-cause proceedings, either under MCR 2.612 or independently, we leave that for the trial court to address in the first instance on remand.[11]

We similarly do not address whether the late fees are unreasonable liquidated damages. "[L]ate fees are similar to liquidated damages, in that they are contractual obligations designed to cover expenses engendered by a breach of contract." *Id*. at 419. A liquidated-damages clause is unenforceable if the stipulated damages are unreasonable in relation to the possible injury suffered. *Solomon v Dep't of State Hwys & Transp*, 131 Mich App 479, 484; 345 NW2d 717 (1984). "To determine whether the amount stipulated as liquidated damages is reasonable, the Court looks to conditions at the time the contract was entered into, not at the time of breach of the contract . . . ." *Id*. The trial court found that the nearly $37,200 of late fees accrued *after* the alleged breach (which was nearly double what defendant actually claimed after correcting his accounting mistake) was "obscene," but it did not characterize the fees as unreasonable liquidated damages, nor did it address whether a one-time $100 penalty and $50 weekly fee was reasonable as of October 3, 2022. In fact, plaintiff only made a conclusory allegation that the late fees were unreasonable. She presented no evidence about the possible injury that defendant or her daughters could have suffered from her allegedly late or missing payments, so it was impossible for the trial court (or this Court, on appeal) to determine whether the late fees were reasonable in relation to that injury.

---

[10] To the extent that the trial court held that the late-fee provision was unenforceable because it violated usury laws, that legal conclusion was erroneous. Michigan's civil usury limit is 5%, although parties may stipulate to a maximum interest rate of 7%. MCL 438.31. "This statute applies to interest charged on a debt arising from the sale of goods or services," but "late payment charges ordinarily do not constitute interest." *Souden v Souden*, 303 Mich App 406, 418; 844 NW2d 151 (2013) (quotation marks and citation omitted). Because the late fees were not interest, they did not violate any usury laws.

[11] With respect to defendant's alleged "spurious accounting" or unreasonable delay in bringing a motion to show cause or other enforcement action, we note that unconscionability is determined by the conditions existing at the time the contract is entered, not when it is enforced. See *Rayford v American House Roseville I, LLC*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No 163989); slip op at 31 n 23, 37.

Therefore, we cannot hold that the late-fee provision is unenforceable, and we leave that question to the trial court if it becomes relevant in subsequent proceedings.

Under the less-than-extraordinary circumstances identified by the trial court, in which the parties' contract operated exactly as written with no intervening events that undermined the purpose of the late-fee provision, MCR 2.612(C)(1)(f) did not provide a basis for setting aside the October 3, 2022 order. See *id*. at 478-479. The trial court therefore abused its discretion when it granted plaintiff's motion to set aside the order under MCR 2.612(C)(1)(f).[12]

We note that, apart from the grounds relied upon by the trial court, the parties have alleged several factual circumstances that would be relevant to whether the contract was unconscionable, and to whether it was obtained by improper conduct by the person in whose favor the stipulated order was rendered[13] that may constitute the extraordinary circumstances needed to justify setting aside the order under MCR 2.612(C)(1)(f). For example, plaintiff alleged in her motion to set aside the order that defendant had superior bargaining power because he was an attorney (and she was not represented by counsel), that he had pressured her to come to an agreement in an unfair and accelerated timeline, and that he had threatened to disclose their negotiations to the children (as well as other financial documentation) and to deny them health insurance coverage if plaintiff did not sign the agreement. In his response, defendant denied that he pressured plaintiff into signing the agreement and further alleged that the parties had extensively negotiated the agreement and that plaintiff herself had proposed the late-fee amounts that she now challenges as unconscionable. Whether these facts, if proven, would show that plaintiff had no "realistic alternative" but to agree to the contract, see *Rayford v American House Roseville I, LLC*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No 163989); slip op at 31 (quotation marks and citation omitted), and whether the late-fee provision, without considering the actual amount of claimed late fees, "shocks the conscience," see *id*. at 36 (quotation marks, citation, and alteration omitted), are questions that we leave to the trial court on remand.

---

[12] Defendant also argues that the trial court abused its discretion by relying on its general equitable powers when it granted plaintiff's motion to set aside the order. A court's equitable powers do not allow it to grant relief on the basis of its application of general equitable principles when there is binding law (in this case, MCR 2.612 and associated caselaw) that clearly dictates the limitations and procedures for exercising that power. Other than observing that it as a court of equity it can provide relief under MCR 2.612(C), the trial court did not claim to have relied on its general equitable powers when it set aside the October 3, 2022 order, but to the extent that it did, that decision was also an abuse of discretion.

[13] The trial court has not decided, and we express no opinion on, whether the October 3, 2022 order was rendered (in whole or in part) in favor of one party over another.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Adrienne N. Young
/s/ Daniel S. Korobkin